Good morning, Your Honor. Your Honor, this is Andrew Moskowitz on behalf of the Plaintiffs' Appellant, COMLAB, Corp. The plan is we'll give you your three minutes and then we'll jump in, but we sometimes jump in before that. No problem. Thank you. Your Honors, I think the most critical piece of evidence, there are two issues in this case. The first is whether there was spoliation. The second is whether the application was timely. I think the most critical piece of evidence that was overlooked by the district court were the invoices. What Kal Tire was able to demonstrate was that they could not locate emails. They didn't receive the emails and COMLAB didn't preserve the date of emails. But critically, COMLAB did keep the invoices and the evidence before the court demonstrated that they utilized a certified e-discovery vendor. They securely copied the files to a staging director and extracted the metadata. The metadata demonstrated in these documents were created each month from January 2016 to July 2017. Now, Kal Tire's expert never reviewed the metadata. All he did was cast doubt. If they were required to demonstrate by clear and convincing evidence fabrication, and I simply believe that they could not have met their burden, their expert, Mr. Caruso, acknowledged in his testimony that to assess this correctly, he would have needed to review the original files, and he never did. All he could do was cast doubt on it. It seems like there may be some problems. I'm not sure. It's easy to manipulate metadata. That doesn't demonstrate clear and convincing evidence of fabrication. And if you haven't fabricated the e-invoices, that goes – that's a very important factor in terms of whether you would fabricate emails. The other factors that are kind of obvious is that COMLAB sent four invoices. Kal Tire received them, and they paid three of them. There was a written contract. The evidence before the court, even in this limited hearing, and it's important to note, Kal Tire was – COMLAB was not actually able to put its case on to prove its case. This was just a hearing on spoliation. The limited evidence before the court did locate them – You have one more minute of your initial three. Thank you. Demonstrated that they did locate emails from and to Kal Tire and COMLAB on the issue of this MyMTG. And, in fact, if you – the record is interesting because it – there's an email on page 159 of the appendix. January 8, 2016, an email from my client with a design presentation from COMLAB. At the end of March 2016, there's a response that says, by the way, we never paid them for any of this work. So there's no question that work was being performed at some point. There's no question that there was a written contract. There's no question that there were invoices sent and some of them were paid. And we're able to demonstrate – certainly EGLE made a demonstration that the invoices themselves were genuine. And COMLAB wasn't able to overcome that for the simple reason that they never actually examined the metadata. So I don't see how they'd be able to demonstrate by clear convincing evidence that this evidence was fabricated. Well, I guess that's on the assumption that the only way you could establish that is with a forensic examination, even, you know, assuming the accuracy of your statement. But there was – there was other evidence. I mean, there was a testimony from the alleged recipients that they – from Caitlin Brothen that she didn't receive them. Vitali couldn't remember receiving them. EGLE testified that the emails didn't appear on CalTIRES servers and that they would have been retained. And then the evidence of no work done on the underlying project, all of that together helps to establish the falsity of the email, doesn't it? Well, you have – you had a one-sentence statement from Amy Brothen saying she didn't recall – she didn't see that she'd received the emails. They deposed Mr. Vitali for a false statement. They never showed him any of the invoices to see if they were genuine. In terms of the work on the project, the only person who had personal knowledge to testify was my client, Mr. DeNino. Mr. DeNino did not have personal knowledge of the project. How does the genuineness – excuse me, counsel. Pardon me? That's okay. Don't worry about it. This is part of the difficulties that we're dealing with. This is Judge Wesley. How does the genuineness of the invoices somehow trump the fact that there's an assertion that they were delivered when the spoilation occurs with regard to the delivery mechanism? Well, because the allegation is that the emails were fabricated and attached to the – the They were simply a vehicle for sending the invoices. So, if the invoices aren't fabricated and you do have evidence in this record – and again, Judge, I understand the point you're making that there was some – there's testimony from Mr. Heal, but there is evidence in this record that work was performed. And there is evidence in this record that a contract  Hang on. As to that, the contract was never signed by anybody from CalTIR, was it? The contract was not signed by CalTIR, but it was presented to CalTIR. And pursuant to that contract, they paid – It has a huge statute of frauds problem, doesn't it? I don't know if that was an issue that was raised before the court. Well, the defense asserted – what I'm trying to figure out here is that what I don't understand is, is it your assertion that as the invoices – that the invoices are a representation of work that was performed? Is that it? And because they were – because they were actually – because they were genuine, therefore work was performed commensurate with those invoices? Is that it? Well, it's one of the – it's indication, yeah. I mean, the fact that they were created around the time that the work was performed is an indication that work was performed. But you also have in the record evidence that work was performed. And I pointed to page – on 159 of the appendix, there's an email exchange. Is that after the first three – is that after the first four months? It's in March of 2016. There's a – there's an email from March of 2016. The contract was entered in August 2015. So, it is after the first four months. The answer is yes. Yes, thank you. So, but I – what is critical and what is baffling in the Acoustic Court initially seized on it was they spent a day deposing Mr. Vitale, and then they never actually showed him the invoices. So, that's a question. They submitted a one-page affidavit from Ms. Vitale. I didn't recall receiving the invoices. But again, all they've demonstrated is that they've demonstrated that they did not receive the invoices. And they also demonstrated, we would admit, that we failed to preserve the emails. But the invoice – the invoices themselves, you know, if they can't show by clear and convincing evidence that those invoices were fabricated, then that really isn't the case. I mean, the case would be – because the invoices would be our basis for seeking payment. So, on the other issues, Your Honors, the Court never made a – really did not make any – You have one more minute of your eight. Can I just – on your – how you started, didn't Caruso testify that the purported metadata associated with the invoices was unreliable and consistent with manipulation? He said that it's easy to manipulate metadata. And he said that it didn't make sense. However, he said – and the fact that it's easy to manipulate metadata doesn't show manipulation by clear and convincing evidence. And he acknowledged in his testimony that to assess this correctly, he would have needed to have accessed the original file. That's at page 65 and 66 of the transcript. So, if Katar is trying to show clear and convincing evidence fabrication, their own expert, by his own admission, says he – all he can do is say it's easy to manipulate metadata. And it doesn't make sense to him. He wants to see more. So, I don't think that doesn't meet the burden. That doesn't meet the burden of showing fabrication. And do you agree that, as Judge Forrest said in her opinion, that the standard for the fabrication, because that's essentially a fraud on the Court, would be clear and convincing, but the spoliation would be by a preponderance? Am I understanding the burden correctly? For fabrication, it's clear and convincing evidence. For spoliation, I think that there is some indication – I think that it would demonstrate that we – I think the standard probably is burden of – is a preponderance. However, that would just lead me to my second point of if it's just a question of failing to preserve emails, not a question of fabricating evidence, then absolutely, there are factors that need to be considered. You need to consider whether there's a pattern of misconduct. There was – whether there was a pattern of misconduct in this case. In this case, Mr. Deno didn't lie about it. He admitted that he deleted the emails. And I would also argue to the absence of prejudice, because here, the issue was not whether invoices or emails were sent. The issue was whether the work was performed. I also wanted to address the issue of the timeliness. Will I be able to do that in my initial – can I address that briefly, Your Honors? You can take a minute and – why don't you take a minute now. Thank you. Any additional time you wish you'd take from your rebuttal time. Thank you. So, on the issue of the timeliness, 54D is pretty clear, and it provides a 14-day limit, and there's a reason for it. And it's the reason – the reason for it is exemplified by this case. Here, we have separate appeals on the merits and insurance fee issue. There was a motion to dismiss the second appeal, two sets of briefs, two appendices, additional delay, and additional cost. And so, this is clearly a case where rule of the 14-day time limit should apply. Here, the amount had not yet been determined, so clearly, they had said that they were entitled to make an application, that they were entitled to recover attorneys' fees, but they said it'll be reasonable attorneys' fees. So, that's a claim. I mean, it's clearly a claim, I believe, as defined under the law. So – and what Comlam – in all their submissions, they've never shown a reasonable excuse, and that's what has to be shown under this court's case law in Tancredi and in Sullivanage. They simply have demonstrated no reasonable excuse. And the idea that they had to review the invoices as a non – that's not a legitimate excuse, because the advisory committee notes explicitly distinguish between a motion for attorneys' fees and material used to set the amount for attorneys' fees. It specifically says you need to file all evidentiary material bearing on the fees within the 14-day deadline. But you do have motion sufficient to alert the adversary in the court there is a claim for fees, and the amount of such fees are at least a fair estimate. Here, they never did that, and they absolutely – not knowing the rule is not excusable neglect. Thank you. Thank you, Judge. Mr. Goldberg? Yes. Good morning, Your Honor. May it please the court, Eric Goldberg, on behalf of the appellee, Cal Tire. I just want to quickly respond to a point that counsel just made about our expert, Cal Tire's expert, Joseph Caruso, testified at the evidentiary hearing that he would have liked to review the native metadata for the invoices. And, in fact, we requested that from plaintiff's counsel, and they refused to provide it. And that appears in the record at S.A. 66 and A. 294 to 295. So, we requested the metadata to analyze it, and plaintiffs refused to provide it. And at any rate, even if these – and as the court correctly noted, Caruso testified that they likely were manipulated and they were not reliable because of a host of issues, and that even if they were genuine, that would not prove that they were actually sent. And that's the critical issue, whether they were transmitted to my client and which would evidence work being done, they were never sent. And so, I think that's a non-issue about that metadata. So, I'll start with the first appeal of Judge Forrest's decision. There are three aspects on appeal. First, for finding a fraud in the court. Second, her dismissal of the action. And third, her award of attorney's fees. First off, Judge Forrest correctly held Comlab committed a fraud in the court by clear and convincing evidence. And she – and that evidence was the testimony of our witnesses, Mr. Heal, our expert, Caruso, the declaration from Caitlin Broughton, and the fact that Mr. Donino, Comlab's CEO, had absolutely no credibility whatsoever and failed to provide any objective evidence that he either sent the emails and invoices or that the virus happened. The evidence clearly established four facts. One, Comlab never sent any of the emails or invoices to Cal Tire. Two, Donino fabricated each of them. Three, Donino intentionally destroyed the native versions of the fake emails and invoices to hide the fact that they were fabricated. And four, Donino made up the virus story in a further attempt to hide the fraud. And this fraud related to central issues in the case, namely whether there is a contract and whether Comlab performed under it. And just to – Ms. Moskowitz mentioned that there were some invoices paid. And as we pointed out in our papers, those invoices were – there were four paid by mistake at the outset because this whole transaction was procured by a rogue employee without Cal Tire's knowledge and he had those payments made. Yes. You have one more minute of your initial three. Thank you. So Judge Forrest had absolutely no doubt what happened and rightfully concluded that Comlab perpetrated a fraud on the court. Judge Forrest also properly dismissed the action as a sanction for spoliation. And that – excuse me – that standard is preponderance of the evidence. And the parties already submitted at Judge Forrest's request these standards and we both stipulated that spoliation is by preponderance and fabrication is by clear and convincing evidence. At any rate, that decision was correct because the spoliation was intentional, willful, and done in bad faith. And it prejudiced Cal Tire because Cal Tire needed the native versions of those documents to conclusively establish that they were fakes. Alternatively, Judge Forrest could also have dismissed the lawsuit as a sanction for Comlab's fraud on the court, namely its fabrication. Under Second Circuit precedent, a court may issue terminating sanctions when the plaintiff repeatedly deceived the court and its adversary about matters relevant to the central claims in the case. And that's precisely what happened here. Giannino gave false testimony on three separate occasions about the emails, invoices, and virus at his deposition, in sworn declaration, and at the evidentiary hearing. And so this is an alternative ground for affirmance. And finally, Judge Forrest correctly awarded Cal Tire its attorneys fees and costs incurred in defense of the case because the fraud pervaded the case from the outset. These fabricated invoices were attached as exhibits to the complaint, and Cal Tire had to defend against this fraudulent action. So there was certainly no abuse of discretion in any of these decisions, and we asked the court to affirm Judge Forrest's decision in its entirety. Turning to the second appeal of Judge Castle's decision, we first asked the court to dismiss the second appeal, because as we noted, the appellant failed to file objections to Judge Wang's report and recommendation, and thereby waived its right to appeal. Although, as the court noted, and we've moved to dismiss this, and the court denied without prejudice and noted that ComLab can overcome the waiver by showing that its arguments on appeal have, quote, substantial merit, end quote. But as we showed in our papers, and as I'll explain shortly, those arguments do have any substantial merit. Now, Judge Castle granted Cal Tire's motion to set the amount of its attorney's fee award, and that decision should be affirmed for three independent reasons. First, Judge Castle correctly held that Rule 54-D does not apply here based on its plain language. The plain language there is, quote, it applies to a, quote, claim for attorney's fees, end quote. And as Judge Wang and Judge Castle noted, Black's Dictionary defines claim as an assertion of an 54-D applies when a litigant wants to establish its right or an entitlement to fees. It does not apply where a party has already been awarded a right to those fees and costs. And that's what happened here. Judge Forrest already awarded Cal Tire a right to attorney's fees and costs in her decision dismissing the action. And this interpretation of the rule finds support in the advisory committee notes, which distinguishes between a Rule 54 motion and a motion to set amount of the fee award. A 54 motion says- Mr. Goldman. Yes. No, go ahead and finish your thought. I apologize, Mr. Goldman. Oh, no, no problem. The point is that Rule 54 recognizes in the advisory committee notes that at the time of filing of a 54 motion, you don't need evidentiary material bearing on the fees. And the committee notes continue and state that that material may be submitted in due course according to a schedule that the court may direct. So Rule 54 recognizes that that motion is to set the amount. I don't see any objection. Your opponents don't contest the calculation of the award or the amount that you've claimed in the context of the accounting of your hours accepted, do they? No, they do not. So their only defense here is timeliness, right, under 54? Correct. Okay. Thank you. And so on appeal, CalMeb argues that this decision was wrong, this plain language interpretation, because it's supposedly inconsistent with Rule 54, with the purpose of Rule 54. But that's simply incorrect. There are three purposes to Rule 54D under the Second Circuit Decision in 10 Credit. First purpose, to provide notice to the losing party before it's time to appeal expires so it can make an informed decision. I apologize for interrupting you again, but the only thing that was in front of, the only thing that was in front of the magistrate was not your entitlement to fees, but how much, correct? Correct. That was the referral to the magistrate. So the magistrate was never called upon to determine if you were entitled to fees because of spoliation or the dismissal. Judge Forrest's order was interpreted by the district court and the referral and not contested with regard to whether you were entitled to the fees, other than on the 54 in front of the magistrate by your opponent, correct? That's correct, Your Honor. Okay. Thank you. And as I was mentioning, the first purpose of Rule 54 is to provide notice. And here, CalMeb had a notice before the time to expire for its appeal. And in fact, it appealed both the award of attorney fees with Forrest and the merits. So there's certainly notice here. Second purpose of Rule 54 is to get a prompt ruling on fees to get a consolidated appeal on merits and fees. And that was certainly satisfied here because in the very first appeal was both on fees and merits. And here today, we're on the, we have a consolidated appeal on all issues. And third, the third purpose of Rule 54 is to get a resolution of fee disputes while the issues are fresh in the party's minds. And here, our briefing on the amount of attorney fees occurred only two months after Judge Forrest's decision. And that was certainly the issues were fresh in all of our minds. There's an alternative ground for affirmance here, and that is Rule 54 did not apply where the court sanctions a party for violating the federal rules of civil procedure. And here, Judge Forrest's decision was based in part on the sanction for violating Rule 37E. But it's not clear whether the award was rooted in a violation of the rules or the court's inherent authority, is it? No, I agree with that, Your Honor. We were arguing this in the alternative that the court may read that into because Judge Forrest did cite Rule 37. So it could, as an alternative grounds for affirmance, hold that the court should affirm because the sanctions were for violating the federal rules and Rule 54 plainly does not apply in that circumstance. In its opposition, or rather in its appeal column, stayed in response to this argument that we didn't raise this in the underlying briefing. And that's false. We did. We argued that in our reply brief, which appears at docket entry number 94 in the Southern District docket. And the third and final reason for affirmance is that the court correctly held that even if Rule 54 applies, any delay by Cal Tire should be excused under the excusable neglect doctrine. And under the U.S. Supreme Court's Pioneer v. Brunswick, there are four factors for courts to consider in this excusable neglect analysis. And our court analyzed each of those. And the first is danger of prejudice. And the court held there was no danger of prejudice here by permitting the motion for attorney's fees, because Collette has known months before the evidentiary hearing in May of 2018 that we wanted to seek attorney's fees. And it knew on September 11th, 2018, that Cal Tire was entitled to attorney's fees, and it appealed both issues. Second, the length of delay. There was only a 23 day delay, and the court noted that that was very brief. The third, the reason for delay, that was certainly addressed by our judge, by Judge Wang, in her R&R. And she noted there were unique circumstances, particularly Judge Forrest's order did not direct the parties to establish the fee amount. It simply ordered Calum Leff to pay all the fees. And then she directed the clerk to terminate the case the following day. And on the same day that Judge Forrest issued the order, she retired from the bench. And then there was no judge assigned to the case for over five weeks. So those circumstances, the court found there's certainly reasons to excuse the delay. And then finally, the issue is whether the movement acted in good faith, whether Cal Tire acted in good faith. And Judge Wang and Judge Cassel agreed that there was good faith. And in its appeal, Calum Leff just argues that Judge Wang hardly addressed factor three, the reason for the delay. And that's, again, allied by her opinion. She devotes almost a full paragraph to that issue. And so we think in some, we think Calum Leff's arguments have no substantial merit, have no merit whatsoever, and that we ask the court to dismiss the second appeal with prejudice or in the alternative to affirm Judge Cassel's decision in all respects. Thank you. Thank you, Mr. Goldberg. Yes. May I rebut? Yes, please. Thank you. Your Honor, it's just on the issue of excusable neglect. Under the Pioneer case and Sylvanich, that's the most important factor, and they simply can't show it. It was clearly within the reasonable control of the movement. They provided no excuse for their late filing. The fact that the judge may have retired or that they didn't know exactly how they're supposed to proceed is not an excusable neglect. And in the Sylvanich case, they go into the fact this can result in potentially draconian consequences. But they note that legal system would have grown under the weight of a regimen of uncertainty in which time limitations are not rigorously enforced. Under the way that Cal Tire interprets this rule, they could spend weeks or months or several months reviewing their invoices and saying that this was the reason why they that's not consistent with Rule 54. It's not consistent with resolving appeals in an expedited manner. The fact that we had to oppose a motion to dismiss and then move to consolidate doesn't help them. That hurts them. It shows how inefficient this was. In this case, Judge Forrest had said that they were entitled to reasonable attorney's fees, but she didn't say what those fees were. So obviously, there had to be a determination made on that. And it's very clear under the rule that this is the purpose is that you file it within 14 days. All you have to do is indicate a very precursory document indicating what it is you believe you are entitled to. And then the other party knows that they don't have to file the notice of appeal yet. And then you have a consolidated appeal on the issues. So again, under their reading of the and just very briefly, the D2E, it does say that it does not apply to clients for fees and expenses. But I believe that has to be interpreted as applying to delocatory orders. Otherwise, there'd be just no time limit on any party's right to apply for fees. And very briefly, I think that the issue before the court is not spoliation, but fabrication. And therefore, it should be a clear and convincing evidence. The argument is that we didn't actually um, these emails didn't actually exist. So it's not a question of that's the argument. That's what they said. And it's not a question of whether we actually sent the destroy the emails. It's a question of whether we fabricate emails. So therefore, I believe the question is clear and convincing evidence. And then wouldn't there be spoliation of the evidence that they didn't exist? If they never existed, how can we spoliate them, Judge? But if the computer if the theory is that there's a computer virus that destroyed computer data, that takes away the ability to index. And that evidence is not available. That takes away the ability to prove that whether they existed or not. I understand. But their argument is that they were fabricated. So if they never, if they never existed, then we would be a spoliation be fabrication. I just In terms of the metadata, the court can look at the record. There's no indication that that Comlab requested. I'm sorry, the Caltar requested that metadata. They made that argument there brief and it's not supported by the record. Absolutely not supported by the record. There was no formal request made for that. Thank you very much. Thank you. Thank you both and nicely well argued. And we'll take the case under advisement. The next case.